IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARIAN CONES | } | |
|     *Plaintiff(s)* | } | |
| | } | |
| v. | } | CIVIL ACTION NO. H-03-5400 |
| | } | |
| DUKE ENERGY CORPORATION | } | |
|     *Defendant(s)* | } | |

### MEMORANDUM OPINION AND ORDER
### ON MOTION FOR SUMMARY JUDGMENT

Pending before the Court is Defendant's motion for summary judgment (Doc. 16). Plaintiff Marian Cones asserts the following claims against Defendant Duke Energy Corporation: (1) retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act ("ADEA"), and the Texas Commission on Human Rights Act ("TCHRA"); and (2) hostile work environment, premised on gender discrimination, in violation of Title VII and TCHRA. For the reasons set forth below, the Court finds that Defendant is entitled to summary judgment on Plaintiff's hostile work environment claims but that material issues of fact remain regarding Plaintiff's retaliation claims. Accordingly, the Court **ORDERS** that Defendant's motion for summary judgment is **GRANTED-IN-PART and DENIED-IN-PART**.

**I.    BACKGROUND AND RELEVANT FACTS**

Marian Cones ("Cones") worked for Duke Energy Corporation ("Duke") in Houston as a Manager of Credit Risk from 01 March 2000 to 01 March 2002. Cones managed the Merchants Group at Duke. She had three direct reports: Rose Fowler, Kurt Gengenbach, and Brenda Pechacek. Like Cones, each of her direct reports was over the age of forty. According to Janna Blanter ("Blanter"), one of Cones's co-workers, each of Cones's direct reports "looked their age." Doc. 18

-1-

Ex. 2 ("Blanter Dec.") ¶ 5.[1] At all relevant times, Cones reported to Bill Pearce ("Pearce"), who in turn reported to Greg Norman ("Norman"), Duke's Senior Director of Corporate Risk Management. This case concerns Cones's last six months at Duke, September 2001 to March 2002. In short, Cones alleges that (1) Norman retaliated against her because she engaged in conduct protected by ADEA and that (2) Pearce both (a) created a hostile work environment in violation of Title VII and TCHRA and (b) retaliated against her for engaging in conduct protected by Title VII and TCHRA.

A.      **The September 26th Meeting**

On September 26, 2001, Cones attended a meeting with Norman and several other credit managers. Exhibit 4, Deposition of Marian Cones ("Cones Depo.") at 73-74. The stated purpose of the meeting was "organizational structure." *Id*. at 75. Norman discussed "an exit plan for the people in [Cones'] group." *Id.* He said that he wanted them to exit her group because "you can't teach an old dog new tricks." *Id.* Norman expressed urgency about terminating these employees. *Id*. at 76-77, 84. According to Cones, Norman told her that he knew it sounded "cruel", but he wanted her to hire their replacements, have them train the replacements, and then "after 60 days we let the old people go." *Id.* at 137-38. Norman asserts that terminating the three employees was never discussed at the meeting. Exhibit 5, Deposition of Greg Norman ("Norman Depo.") at 28-29.

Janna Blanter and Kevin Davis ("Davis") also attended the September 26th meeting. Blanter later advised Mark Short ("Short") of Duke's Human Resources Department that Norman said at the meeting something about having "no lifers". Ex. 6, Deposition of Mark Short ("Short Depo."), p. 50; *see also* Exhibit 9 (Mark Short notes at EBG 0153). Blanter confirmed for Short that Norman

---

[1] Blanter worked as a Director in Duke's Credit Department. For a period of time, Cones reported to Blanter. *Id.* ¶ 2. Unless otherwise noted, all "Exhibit" references throughout this Order refer to the exhibits attached to *Plaintiff's Response to Defendant's Motion for Summary Judgment* (Doc. 18).

had made the "old dog new tricks" comment. *Id.* at 52. Likewise, Davis confirmed that Norman's plan was to hire three new employees and then "have the old ones train them and then get rid of them." *Id.* at 55. Davis also recalled the "old dogs new tricks" comment. *Id.* at 55-56; *see also* Exhibit 9 (EBG 0157).

**B.     Cones's Complaints About the Meeting and Short's Investigation**

Shortly after the September 26th meeting Cones went to speak to Bill Pearce, her direct supervisor. Cones told him that she was not comfortable with Norman's instructions to fire the employees, who she thought were good workers, and that she thought it sounded like age discrimination. Cones Dec., ¶ 9. Cones asserts that Pearce told her that he had gone and talked to Human Resources and to an in-house labor lawyer and that he agreed it sounded like age discrimination. *Id.* Cones also called Duke's Ethics Line, an "800" number that employees can call to submit complaints about issues such as discrimination. Regardless of the complaint's topic, Duke promises its employees that they will be free from reprisal if they use it. Short Depo. at 26-29. Cones called the Ethics Line on October 14, 2001. *Id*. at 29; Exhibit 10 (Duke's Ethics Line documentation). In her call, Cones complained that Norman "makes inappropriate comments about minorities and older people." Exhibit 10. She also complained that Norman made ethnic jokes and disparaging remarks about minorities. *Id.* She referenced a recent comment by Norman about Hispanics in which he remarked about them that he could not get good help to work on his lawn. *Id.* Further, Cones complained that Norman:

> ...frequently makes negative comments about older employees. Mr. Norman says of
> older employees, "you can't teach an old dog new tricks." Specifically Mr. Norman
> is referring to Rose Fowler, credit analyst, Brenda Pechacek, senior credit analyst,
> and Kurt Gengenbach, credit analyst. Ms. Fowler is over 40 years old, Ms. Pechacek
> is over 50 years old, and Mr. Gengenbach is over 60 years old.

> The caller stated [that] during a meeting on September 26, 2001, Mr. Norman

       commented that Ms. Fowler, Ms. Pechacek and Mr. Gengenbach were never going to make it to the "next level." Mr. Norman announced that he planned to hire three new employees and train them. Once the new employees were trained, Mr. Norman indicated that he wanted to terminate the three older employees. The caller stated the meeting was attended by Randy Baker, Janna Blanter, Bill Pearce, and Renee Jackson, directors of credit, and Kevin Davis and Marian Cones, directors of credit.

Exhibit 10.

       Mark Short of Human Resources was assigned to investigate the Ethics Line complaint. During his interview with Norman, Norman claimed that his comments were made in a casual or joking manner. He claimed that he merely had concerns about the three employees' skills and abilities "to make it to the next level." Short Depo. at 71. According to Short, Norman's remarks "were not consistent" with the employees' performance appraisals. *Id.* at 71-72.[2] After his investigation, Short determined that Cones' complaints were substantiated. *Id.* at 75-76; Exhibit 11. Among other things, Short determined that Norman had, in the context of firing three workers in the protected class after having them train their replacements, made an inappropriate comment about old dogs not being able to learn new tricks. Short Depo., p. 77. Short concedes that making such a comment raises a red flag as to a possible violation of the Age Discrimination in Employment Act. *Id.* at 35-36. Based upon Short's investigation, Norman was counseled by his supervisor on approximately October 19. *Id.* at 77-78; *see also* Exhibit 11.

**C.    Beginning of Alleged Acts / Pattern of Retaliation**

       According to Blanter, shortly after Norman was counseled he approached her and told her that he knew either she or Cones had made the Ethics Line Complaint. Blanter Dec., ¶ 9. Shortly after that, Blanter was relieved of all of her direct reports and was transferred to a "special project"

---

[2] When Short interviewed Bill Pearce, Pearce said he had already spoken with Human Resources and the General Counsel's office about the proposed firings, and that neither of them would support dismissal of at least two of the employees. Short Depo., p. 65-66.

that was, in Blanter's view, a step down. *Id.*, ¶ 10. Cones alleges that it was also around this time that retaliatory acts were taken against her.

On November 16, Pearce left Cones a voice mail stating that he "must" meet with her before she left for the day. Cones Dec., ¶ 14. Cones could tell from the tone of his voice that he was very upset about something. *Id*. Cones went to his office at 1 p.m., where a lengthy meeting followed. *Id*. Pearce stated numerous criticisms of Cones, but would not allow her to speak or respond. *Id*. When she did try to say something, he would threaten her, saying: "just say one more thing, one more thing and you'll be sorry!" *Id*. Among other things, Pearce criticized Cones for recommending that Rose Fowler–one of the older workers Norman had proposed firing–receive a promotion. *Id.* Cones claims that she asked Pearce if Norman was "still planning to go through with his plan to terminate the older workers that Norman had talked about at the September 26 meeting". *Id.*, ¶ 15. Pearce responded that "Greg does have a plan." *Id*. Cones asserts that this meeting was the beginning of a pattern of retaliation against her at Duke. As discussed below, Cones alleges that further acts of retaliation for her reporting Norman's allegedly age-discriminatory behavior resumed in January 2002.

**D.     Hostile Work Environment and Retaliation Claims Specific to Pearce**

Cones asserts that during her time at Duke Pearce created a hostile work environment that was discriminatory towards women. On 19 December 2001, Cones sent an email to Norman complaining about Pearce's behavior. Exhibit 13. She sent a copy to Short as well. Short Depo., p. 81-82. Cones complained about Pearce's inappropriate language (*e.g.*, "I'm hiring a cute gal, a real doll from UH") and his sexual references and innuendoes (asking a co-worker named Tina if she was going to wear a thong to the Christmas party). Exhibit 13 (EBG 190). Cones attached a Microsoft Word file to the e-mail documenting her mid-November confrontations with Pearce. *Id.*

(last page).

Within one week of Cones communicating to Norman her complaints about Pearce–including his sexually harassing conduct–Pearce called Short out of the blue and said he wanted Cones terminated. Short Depo., p. 97-98. According to Short, Pearce said that Cones had "declared war," and that he could no longer trust her. *Id*. at 100. Pearce wanted Cones fired the very next day. *Id*. at 100-01.

E.      **Alleged Continuation of Retaliatory Conduct**

Cones asserts that the retaliation continued in January 2002. Early that month Short told Cones that her job was going to be restructured. Cones Decl. ¶ 20. On 17 January 2002, Cones met with Norman and Pearce to discuss the changes. As part of this restructuring, Cones's job responsibilities were significantly reduced and her short-term incentive bonus was reduced. Cones went from having three direct reports to having only one. Cones's title and salary remained unchanged. Cones was also moved from her office to a cubicle. According to Cones, she met with Short shortly after the January 17th meeting, and he told her that her complaints had made her a "target." *Id.* ¶ 26. According to Duke, the changes in Cones's job situation were related to performance problems, including a $4,000,000 loss related to a lapsed letter of credit for which Brenda Pechacek, one of Cones's direct reports, was responsible.

On 28 January 2002, Jorge Garcia began working at Duke as a Manager of Credit Risk, the same title as Cones's. Cones was supposed to report to Garcia. On January 29th, Cones was called into a meeting with Pearce and Garcia. Cones asserts that at his meeting Pearce yelled at her, told her he knew she had reported him to HR, and–among other things–called her a "bitch." *Id*. ¶ 28. After this meeting, Cones's job responsibilities were further reduced.

-6-

### F.    Cones's Resignation, EEOC Investigation, and Filing of This Lawsuit

Cones began searching for alternative employment and, in mid-February 2002, she took some vacation time. Cones was scheduled to return from vacation on March 1. In anticipation of her return, she emailed Mark Short on February 28 about meeting with him, and about a luncheon she would be attending the next day. Exhibit 19. Also on that day, according to Mark Short's notes, Cones reported that Pearce was warning employees not to come to work the next day because "it could get ugly." Exhibit 12. Cones told Short she considered this to be a threat. *Id.*

The next day, Short received a call from Duke's Director of Security, who reported that Cones was afraid to go to her desk because of Pearce. Exhibit 12 (EBG 0174). Short called Pearce to his office, who confirmed he had made the threatening comments but claimed "he was only joking." Exhibit 12. Short did not believe Pearce. Pearce was told to leave and his employment with Duke was subsequently terminated. *Id.* at 202; Exhibit 20.

When Cones had left on vacation, her responsibilities were limited to "managing the rack business." Cones Depo. at 200. When she returned on March 1 Jorge Garcia further reduced her responsibilities. *Id.* at 201. Garcia split the list of rack customers in two, assigning half of them to Cones and half to her one subordinate, Ben Anderson. At this point Cones decided that there was not going to be any improvement and that she had no choice but to resign. *Id.* at 202-03. She went back to her desk and "thought about the whole situation." *Id.* at 203. She then went back to Garcia and told him that she was resigning. *Id.* She handed him a written letter of resignation. *Id.* at 206; Exhibit 21.

Cones subsequently filed a charge of discrimination with the EEOC. *See* Doc. 17 Exhibit E. On April 11, 2003, the EEOC issued a Letter of Determination. The EEOC concluded as follows:

> Based on the investigation, there is reasonable cause to believe a violation of Title VII occurred and that Respondent harassed and constructively discharged Charging Party in retaliation for her protected complaints about discriminatory practices. There is reasonable cause to believe that Respondent retaliated against the Charging Party because of her complaints by taking her office away and reducing her responsibilities and the number of people reporting to her. However, based on the evidence supplied by both the Charging Party and Respondent and uncovered during the Commission's investigation, there is not reasonable cause to conclude that Respondent has discriminated against Charging Party because of her sex or has violated the Age Discrimination in Employment Act of 1967, as amended.

*Id.* On 25 November 2003, Cones filed suit in this Court. Duke has moved for summary judgment and Cones has responded. Duke's motion is ripe for ruling.

## II.    LEGAL STANDARD

The movant seeking a federal summary judgment initially must inform the court of the basis for his motion and point out those portions of the pleadings, depositions, answers to interrogatories, and admissions on file that demonstrate the absence of a genuine issue of material fact and show that he is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant need not negate the opposing party's claims nor produce evidence showing an absence of a genuine factual issue, but may rely on the absence of evidence to support essential elements of opposing party's claims. *International Assoc. of Machinists & Aerospace Workers, Lodge No. 2504 v. Intercontinental Mfg. Co.*, 812 F.2d 219, 222 (5th Cir. 1987). The burden then shifts to the non-movant to set forth specific facts and competent summary judgment evidence to raise a genuine issue of material fact on each essential element of any claim on which he bears the burden of proof at trial. Fed. R. Civ. P. 56(c). The substantive law governing the suit identifies the essential elements of the claims at issue and therefore indicates which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-moving party may not rest on mere allegations or denials in its pleadings, but must produce affirmative evidence

and specific facts. *Anderson*, 477 U.S. at 256-57. He meets this burden only if he shows that "a reasonable jury could return a verdict for the non-moving party." *Id.* at 254. A mere scintilla of evidence will not preclude granting of a motion for summary judgment. *Id.* at 252.

All reasonable inferences must be drawn in favor of the non-moving party. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574. 587-88 (1986), citing *United States v. Diebold*, 369 U.S. 654, 655 (1962). Once the burden of proof has shifted to the non-movant, he "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. at 586. Instead he must produce evidence upon which a jury could reasonably base a verdict in his favor. *Anderson*, 477 U.S. at 249. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.*, 477 U.S. at 249-50. Moreover the non-movant must "go beyond the pleadings and by her own affidavits or by depositions, answers to interrogatories and admissions on file, designate specific facts that show there is a genuine issue for trial." *Webb v. Cardiothoracic Surgery Assoc. of North Texas, P.A.*, 139 F.3d 532, 536 (5th Cir. 1998). Unsubstantiated and subjective beliefs and conclusory allegations and opinions are not competent summary judgment evidence. *Grimes v. Texas Dept. of Mental Health and Mental Retardation*, 102 F.3d 137, 139-40 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.), *cert. denied*, 506 U.S. 825 (1992). Nor are pleadings summary judgment evidence. *Wallace v. Texas Tech University*, 80 F.3d 1042, 1046 (5th Cir. 1996), *citing Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(*en banc*). The non-movant cannot discharge his burden by offering vague allegations and legal conclusions. *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992); *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 889 (1990). Nor is the district court required

by Rule 56 to sift through the record in search of evidence to support a party's opposition to summary judgment. *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998), *citing Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992).

### III. ANALYSIS

After reviewing the record compiled by the parties, the Court concludes that Duke is entitled to summary judgment on Cones's hostile work environment claims. However, material issues of disputed fact remain with respect to Plaintiff's retaliation claims. Accordingly, summary judgment on Plaintiff's retaliation claims is denied.

### A. Hostile Work Environment

In her Response, Plaintiff argues that she was subjected to a "hostile environment" because Pearce would refer to women as "cute gals," "real dolls," "doll," and "real sweet kid." In addition, Plaintiff complains that she was made aware of inappropriate comments that Pearce had made to other women, such as asking a co-worker if she was going to wear a thong to the Christmas party. In order to be actionable, the conduct alleged to constitute a hostile work environment must be "sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment." *Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999). As the Fifth Circuit noted in *Indest v. Freeman Decorating*, 164 F.3d 258 (5th Cir. 1999), "[i]ncidental, occasional or merely playful sexual utterances will rarely poison the employee's working conditions to the extent demanded for liability." *Id.* at 264. Likewise, discourtesy, rudeness, offhand comments and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment. *Id.* The Court finds that, even assuming *arguendo* that Plaintiff's allegations are true, Pearce's alleged conduct amounts to rude and offensive behavior at most, and

-10-

is not actionable. While Pearce's responses to Cones's complaints may be actionable under Title VII as unlawful retaliation, as discussed below, Plaintiff has failed to establish that Pearce created a sufficiently severe or pervasive hostile work environment in the first instance. Accordingly, Duke is entitled to summary judgment on Plaintiff's hostile work environment claims.

**B.     Retaliation Claims**

In order to establish a *prima facie* case of retaliation Cones must demonstrate that: 1) she engaged in protected conduct; 2) Duke took an adverse employment action against her; and 3) causation. *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 705 (5th Cir.), *cert. denied*, 522 U.S. 932 (1997) (Title VII); *Grizzle v. Travelers Health Network, Inc.*, 14 F.3d 261, 267 (5th Cir. 1994) (ADEA); *Pineda v. United Parcel Service, Inc.*, 360 F.3d 483, 487 (5th Cir. 2004) (TCHRA)[3]. For purposes of the *prima facie* case, causation is inferred with nothing more than proof that the employer knew about the protected activity, along with a temporal relationship between that knowledge and the adverse consequences. *Ray*, 63 F.3d at 435 n.23; *Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1141 n.13 (5th Cir. 1981). This is a "highly fact specific" inquiry. *Nowlin v. Resolution Trust Corp.*, 33 F.3d 498, 508 (5th Cir. 1994). Once the employer articulates a legitimate, non-discriminatory excuse for its conduct, summary judgment may be overcome either with evidence of pretext, *Fierros v. Texas Dep't of Health*, 274 F.3d 187, 191-92 (5th Cir. 2001), or with proof that, the excuse notwithstanding, the plaintiff's protected activity nonetheless motivated the employer's conduct. *Warren v. Terex Corp.*, 328 F. Supp.2d 641, 642-45 (N.D. Miss. 2004).

---

[3]As the Fifth Circuit noted in *Pineda*, the purpose the TCHRA is to provide for the execution of the policies of Title VII of the Civil Rights Act of 1964. *Pineda*, 360 F.3d at 487; *see also* Tex. Lab.Code § 21.001(1) (Vernon 1996); *Quantum Chem. Corp. v. Toennies,* 47 S.W.3d 473, 476 (Tex.2001). Thus, "analogous federal statutes and the cases interpreting them guide" the reading of the statute. *Quantum,* 47 S.W.3d at 476.

Cones's complaints (1) to Pearce and Duke's Ethics Hotline about Norman's desire to fire her three direct reports and replace them with younger people and (2) to Norman and Short regarding Pearce's alleged sexually harassing behavior constitute protected conduct under (i) ADEA and (ii) Title VII and TCHRA, respectively. The next issue for the Court to take up is whether Cones suffered any adverse employment actions. After reviewing the record in this case, the Court finds that she did. There is no dispute in this case that Plaintiff's job responsibilities were significantly decreased; that she went from having three direct reports to one; that she was moved from an office to a cubicle; that she was reduced to menial and administrative tasks that were not commensurate with her experience; and that her short-term incentive bonus was significantly reduced. The Court finds that these changes in Plaintiff's job status constitute an adverse employment action. Plaintiff has marshaled sufficient evidence to demonstrate that she suffered a demotion in substance, even if not in formal title.[4] Furthermore, the summary judgement evidence also creates a fact issue as to constructive discharge.

Finally, with respect to causation, "an inference of causation may be drawn if the plaintiff puts forth evidence of the employer's knowledge of the protected activity, plus shows a temporal proximity of that knowledge and the adverse employment action." *Ray v. Tandem Computers, Inc.,* 63 F.3d 429, 435, n. 23 (5th Cir.1995) (citing *Payne v. McLemore's Wholesale & Retail Stores,* 654 F.2d 1130, 1141 (5th Cir. 1981)). The Court finds that Cones has marshaled substantial evidence on the causation issues in this case. Whether the adverse employment actions suffered by Cones were motivated by retaliatory animus due to her report of (a) Norman's age-related comments and

---

[4]*See Sharp v. City of Houston*, 164 F.3d 923, 933 (5th Cir. 1999) ("To be equivalent to a demotion, a transfer need not result in a decrease in pay, title, or grade; it can be a demotion if the new position proves objectively worse–such as being less prestigious or less interesting or providing less room for advancement.").

/ or (b) Pearce's gender-related conduct are questions of fact that must be answered by a jury. Summary judgment is denied as to Cones's retaliation claims.

### IV.     CONCLUSION & ORDER

For the foregoing reasons the Court **ORDERS** that Defendant's motion for summary judgment is **GRANTED-IN-PART and DENIED-IN-PART**. Defendant is entitled to summary judgment on Plaintiff's hostile work environment claims, but material issues of fact remain regarding Plaintiff's retaliation claims and thus summary judgment is denied as to those claims.

**SIGNED** at Houston, Texas, thjs 29th day of April, 2005.

                                                  MELINDA HARMON
                                           UNITED STATES DISTRICT JUDGE